Williams, J.
The petition, it must be conceded, states a cause of action, to which the paragraph of the answer demurred to, is no defense, unless the defendant is protected against liability for its negligence, by the law under which it was incorporated, or can in some way derive such protection from it.
There is a class of public corporations, sometimes called •civil corporations, and sometimes quasi corporations, that, by the well settled and generally accepted adj udications of the courts, are not liable to a private action in damages, for negligence in the performance of their public duties, except when made so^ by legislative enactment.
Of this class, are counties, townships, school districts and .the like. The reason for such exemption from liability, is that organizations of the kind referred to, are mere territorial .and political divisions of the state, established exclusively for *97 public purposes, connected with the administration of lo.cal government. They are involuntary corporations, because created by the state, without the solicitation, or even consent, of the people within their boundaries, and made depositaries of limited political and governmental functions, to be exercised for the public good, in behalf of the state, and not for themselves. They are no less than public agencies of the state, invested by it, of its own sovereign will/ with their particular powers, to assist in the conduct of local administration, and execute its general policy, with no power to decline the functions devolved upon them, or «withhold the performance of them in the mode prescribed, and hence, are clothed with the same immunity from liability as the state itself.
The Board of Commissioners v. Mighels, 7 Ohio St. 119; Finch v. Board of Education, 30 Ohio St. 37; The State v. Powers, 38 Ohio St. 54; Bigelow v. Randolph, 14 Gray, 541; Lloyd v. The Mayor, etc., 1 Selden, 369; Bailey v. The Mayor, etc., 3 Hill, 531; Riddle v. Locks and Canals, 7 Mass. 169 ; Brown v. South Kennebec Agricultural Society, 47 Maine, 275.
This rule of exemption, however, extends no further than its reason, and therefore has no application to corporations •called into being by the voluntary action of the individuals forming them, for their own advantage, convenience or pleasure. Corporations of this class, which are but aggregations of natural persons associated together by their free consent, for the better accomplishment of their purposes, are bound to the same care, in the use of their property, and conduct of their affairs, to avoid injury to others, as natural persons; and, a disregard or neglhct of that duty, involves a like liability.
When, therefore, it is determined, to which of these classes of corporations the defendant belongs, a decision of the case is reached; and, to do this, an examination of the statutes, under which the organization of the defendant was effected, becomes necessary.
The act of February 28,1846, and the amendments thereto, in so far as they aid this inquiry, in substance provide; that thirty or more persons, residents of the county, may, by organ *98 izing themselves into a society for the improvement of agriculture, adopting a constitution and by-laws for their government, and appointing the customary officers, become a body corporate, with capacity to sue and be sued, “ and perform all such acts as they deem best calculated to promote the agricultural and household manufacturing interests” of the county and state; and, when they shall pay to the treasurer of the-society, “by voluntary subscription, or fees imposed on its-members, any sum of money in each year not less than fifty dollars,” they are entitled, upon the certificate of the president,, verified by the oath of the treasurer, to the effect that such payment has been made, to draw from the county treasury an equal amount, but not to exceed two hundred dollars. The societies are also made capable “'of holding in foe-simple, such real estate as they have purchased or may hereafter purchase, for sites-whereon to hold their fairs,” and, to receive and make conveyances and agreements in relation thereto. The county commissioners are authorized, “if they think it for the best interests of the county and society,” to contribute out of the county treasury, for the purchase or lease of such site, a sum equal to, or greater than that paid by the society for the purchase or lease thereof, but no tax shall be levied for a sum greater than that paid by the society, unless a majority of the electors of the county, voting at some general election, shall vote in favor of such tax. The society is empowered to sell its fair grounds “in such manner and on such terms as it may deem proper,” and conveyances therefor may be executed by the president; but “ grounds owned partly by the society and partly by the county,” cannot be sold or incumbered, without the consent of the commissioners, and when sold, the conveyance must be executed by the commissioners, as well as the president of the society. The money arising from the sale, is required to be paid into the county treasury, and cannot be paid out, without the consent of the commissioners.
The duties enjoined on such societies are, to “offer premiums for the improvement of soils, tillage, crops, manures, implements, stock, articles of domestic industry, and such other articles, productions and improvements, as they may deem proper,”' *99 and, to so “ regulate the amount of premiums, and the different grades of the same”, that “ small as well as large farmers ” may “ have an opportunity to compete therefor.” They are required to publish a list of the awards, and an abstract of the treasurer’s report, in the newspapers of the county, and report annually their proceedings, with a synopsis of the awards, a description of the improvements, and the condition of agriculture in the county, to the State Board of Agriculture.
From this summary oFthe statutes, it is apparent, that corporations formed under them, are not mere territorial or political divisions of the state; nor are they invested with any political or governmental functions, or made public agencies of the state, to assist in the conduct of its government. Nor can it be said, that they are created by the state, of its own sovereign will, without the consent of the persons who constitute them, nor that such persons are the mere passive recipients of their corporate powers and duties, with no power to decline them, or refuse their execution. On the contrary, it is evident that societies organized under the statutes, are the result of the voluntary association of the persons composing them, for purposes of their own. It is true, their purposes may be public, in the sense, that their establishment may conduce to the public welfare, by promoting the agricultural and household manufacturing interests of the county; but, in the sense, that they are designed for the accomplishment of some public good, all private corporations are for a public purpose, for the public benefit, is both the consideration and justification for the special privileges and franchises conferred on them. These agricultural societies are formed of the free choice of the constituent members, and by their active procurement; for, it is only when they organize themselves into a society, adopt the necessaiy constitution, and elect the proper officers, that they become a body corporate. The state neither compels their incorporation, nor controls their conduct afterward. They may act under the organization, or at any time dissolve, or abandon it.
While the authority is not in terms conferred on such so *100 cieties, to hold fairs, and charge for admission to them, the power to “ perform all such acts as they deem best calculated to promote the agricultural and household manufacturing interests ” of the county, appears to be ample, for that purpose, and also to authorize the society to select the site whereon to hold the fair, adopt plans for buildings and superstructures, and erect them, at its pleasure. The society is absolutely free, to determine whether it will erect any buildings, or seats, for the accommodation of its patrons, and, if any, what kind, and of what material. It is subject to no control, either in the selection of the material, or in the employment of the architect, superintendent or workmen •, and the whole management and conduct of the fair, is committed to it, and its officers, with the power, to determine what shall be done, how it shall be done, and by whom it shall be done. In short, in the execution of the powers conferred on it, the society selects its own agents, is invested with the sole control over them, and may, for its own indemnity, exact such guarantees against the want of skill and care in their employment, as it may deem proper, and be able to obtain.
There are cases, where a party, under no legal obligation to perform an act or service, may, nevertheless, be liable for damages caused by his negligence, if he voluntarily enter upon its performance. And, though the defendant below, was not bound to provide seats for the convenience of persons attending its fairs, and the omission to do so, would subject it to no liability, yet, having voluntarily entered upon their construction, for the purpose of being occupied by the people present, and to afford them greater convenience and comfort in witnessing the exhibition, thus constituting, when completed, an invitation to occupy them, as well as an inducement for the patronage of the fair, every consideration of right and justice requires, that in their construction, the society should have a careful regard for the safety of those for whose use they were designed, and who should act upon the invitation. And, since the defendant selected, and controled its own agents and servants, and might, by the exercise of due care in their employment, *101 bave secured the construction of seats, that were suitable, and therefore safe (for they can be suitable only when safe), that law of social duty, which exacts of all, that they shall so conduct themselves as not to injure others by their neglect, forbids that the defendant should interpose its own incorporation, self-sought, and voluntarily maintained, as a shield against liability to one who, being rightfully upon the seats, and free' from fault, is injured by reason of its negligence in their construction.
Besides, it is evident that the defendant has, or may have, a corporate fund; for, it is authorized to hold in fee-simple, “ such real estate as it has purchased, or may hereafter purchase, for sites whereon to hold fairs; ” and there appears to be no limit affixed, either to the quantity, or value, of the real estate it may so own. True, it is provided, that if the county commissioners, with the county funds, contribute towards its purchase, it cannot be sold or encumbered without their consent; but the answer contains no allegation, that such contribution was made in the purchase of the defendant’s grounds.
Then, again, the statute imposes no limitation upon the amount that may be charged for entry fees, or for admission to the fair ; nor is there anything in the statute which requires the society to expend the whole of its receipts, in the payment of premiums, awards or expenses, or for any other specific purpose. They shall offer premiums “ as they deem proper,” is the language of the statute. The income, may many times exceed the expenditure, and hence, not only may a corporate fund be acquired, but it may be distributed among the members, or held for other disposition, at the pleasure of the society, and the corporation may thus become one of pecuniary profit, with the control and management of property, real and personal; and we see no reason why, for private injuries, caused by the improper management of its corporate property, it should not be held to the same general liability, as natural persons who own and manage the same kind of property.
Our conclusion is, that the facts stated in the portion of the answer demurred to are insufficient to constitute a defense to *102 the case made by the petition, and the demurrer should have been sustained.

Judgment of the district court, and of the court of common pleas reversed, and the cause remanded, ivith instructions to sustain the demurrer, and for further proceedings.